UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

   v.                                                          Case No. 18-CR-62

BRIAN L. GANOS,
MARK F. SPINDLER,
SONAG COMPANY, INC., and
NUVO CONSTRUCTION COMPANY, INC.,

          Defendants.

**UNITED STATES' OBJECTION TO THE DENIAL OF ITS MOTION TO QUASH**

The United States of America, by United States Attorney Matthew D. Krueger and Assistant United States Attorney Zachary Corey, respectfully objects to United States Magistrate Judge Jones' oral denial of its Motion to Quash Subpoenas *Duces Tecum*. *See* Doc. 68. The subpoenas, which Sonag Company, Inc. ("Sonag") served on the Wisconsin Department of Transportation and the Wisconsin Elections Commission, should be quashed for two related reasons. First, the subpoenas should not be enforced under Rule 17(c) because they are inappropriate tools of discovery, do not serve any compelling need, and pose an unreasonable burden on thousands of individuals' privacy interests. Second, no other authority—especially not the Jury Selection and Service Act of 1968—authorizes a criminal defendant to obtain such records. To the contrary, permitting a defendant in this single criminal case to obtain such records would undermine the Act's detailed scheme for the orderly establishment of fair Jury Plans.

1

**BACKGROUND**

The superseding indictment charges the defendants with defrauding the United States and other entities with respect to contracts and purchase orders that were set aside for small businesses owned by disadvantaged individuals or service-disabled veterans. *See* Doc. 25. Defendant Sonag moved for an order to enforce two subpoenas *duces tecum* that it served on the State of Wisconsin to produce certain information in anticipation of a subsequent motion to challenge the Jury Plan in this district. *See* Doc. 32.

The first subpoena requests that the Wisconsin Elections Commission provide the "current WisVote database" for the twelve counties that compose the Milwaukee Division. The subpoena seeks "information from the November 2016 general election," including "two confidential fields: the field including date of birth of the voter; and the field containing information from any Wisconsin Department of Transportation ["DOT"] driver's license or state identification card that the voter presented to polling officials." *See* Doc. 55, Exhibit A. The second subpoena requests that the Wisconsin Department of Transportation provide the DOT "database or databases for all driver's license holders and state identification card holders" for the same twelve counties, except that the "databases should be produced without any Social Security numbers, photographs, or fingerprints." *See* Doc. 55, Exhibit B.

As indicated, the subpoenas call for the State to disclose hundreds of thousands of individuals' confidential information. Sonag and the State have discussed alternative steps the State could take to limit the disclosure of confidential information. Under the proposal, the DOT would attempt to cross-reference the Wisconsin Elections Commission's data with DOT data and provide tables with (1) "raw numbers of all individuals in WisVote with a current or inactive voter registration status in each of the twelve counties," with "race, Hispanic ethnicity, and sex by

numbers for each county," and (2) "raw numbers of actual voters in the November 2016 general election in the same twelve counties (again separated by county)," and again listing the same demographic information. *See* Doc. 50-1 ¶¶ 1, 2 (proposed order). In addition, the proposal would require the State to provide "the complete publicly available voter file, plus the birth data of all individuals with a currently active or inactive voter registration, who currently do not have a Wisconsin driver's license or Wisconsin state identification card that is listed in the Wisconsin DOT database." *Id.* ¶ 3. Sonag's counsel estimated that this group would include approximately 8% of individuals in the WisVote database. *See* Doc. 35, at 1-3. Thus, even under the proposal, the State would be disclosing names, addresses, and birth data for 8% of registered voters in twelve counties.

Counsel for the State observed that although the State is interested in accommodating the Court, State law does not permit disclosure of this information. *See* Doc. 35, at 2. On August 31, 2018, the State filed a motion to quash the subpoenas. *See* Doc. 53. The State cited the leading Supreme Court case governing Rule 17(c) subpoenas, *United States v. Nixon*, 418 U.S. 683 (1974), and contended that the defense had not made the requisite showing to enforce the subpoenas. The State also filed a letter that explained because the State "is putting forth a great deal of time and expense to obtain this information for the court," the State seeks a "ruling that the need for the documents is legally justified and that the process used is lawful." Doc. 52, at 1. On September 6, 2018, the United States also filed a Motion to Quash that argued that the subpoenas should not be enforced under Rule 17(c) because they are inappropriate tools of discovery, do not serve any compelling need, and pose an unreasonable burden on thousands of individuals' privacy interests. *See* Doc. 55. The United States also argued that no other authority authorized a criminal defendant to obtain such records. *Id.* Sonag responded to the Motions to Quash the same day. *See* Doc. 56.

On September 17, 2018, United States Magistrate Judge Jones held a status conference and used the *United States v. Nixon* framework to state that the subpoenas are "going to be permissible" under Federal Rule of Criminal Procedure 17(c). *See* Doc. 68 and Audio Recording. The Magistrate Judge explained that in his view, the subpoenas sought information that could be relevant to a jury selection challenge, that the subpoenas were reasonably targeted, and that Sonag and the State had taken steps to reduce the possibility of confidential information being disclosed to the public. The Magistrate Judge indicated that he would issue a written order sometime in October 2018.

The United States objects now to the Magistrate Judge's oral ruling instead of waiting for a written order out of an abundance of caution. First, under Federal Rule of Criminal Procedure 59(a), objections to "an oral or written order" are due within 14 days, which could be construed to require objections to be filed 14 days from September 17, 2018. Second, if the State relies on the oral ruling and proceeds to produce the subpoenaed information before the Magistrate Judge issues his written report and recommendation, the United States' motion to quash could become moot. Third, and in all events, the United States is concerned that the process of subpoenaing this information has already taken much more time than expected. *See* Doc. 32 (stating that Sonag "expects to file that substantive motion on or before the August 24, 2018 deadline . . ."). Although Sonag initially estimated it could file its substantive motion by August 24, 2018, the State has delayed its expected date of production several times. Consequently, the date by which Sonag expects to file its substantive motion has also been delayed. *See e.g.*, Doc. 35. At the most recent September 17, 2018 status conference, the State had still not produced the data and counsel for Sonag indicated that he believed that the preliminary trial dates set by this Court should be removed from the calendar. *See* Doc. 68. Accordingly, since the United States and the general public have

an interest in the timely resolution of its criminal indictments, the United States files this objection to the oral ruling without further delay.

**DISCUSSION**

The Court should overrule the Magistrate Judge's denial of the United States' Motion to Quash for several related reasons. First, contrary to the Magistrate Judge's ruling, the subpoenas are not properly authorized under Rule 17(c) because they are being used as tools of discovery and do not serve any compelling need; moreover, the subpoenas place an unreasonable burden on individuals' interests in protecting their confidential information. Further, although the Magistrate Judge did not address this point, a district court does not possess other authority besides Rule 17(c) to compel the State to disclose thousands of individuals' records to a criminal defendant. To the contrary, the Jury Service and Selection Act provides litigants with access to a different set of information, namely, records maintained by the Court. And the Act provides that a State may be required to provide its records in a different context—namely, to the Court, upon application of the United States Attorney General, in the normal course of developing a district-wide Jury Plan. Consequently, the Act forecloses a criminal defendant from obtaining the State's records directly.

**I.      The Subpoenas Should Not Be Enforced Under Rule 17(c)**

A "criminal defendant is entitled to rather limited discovery" when compared with the general discovery available to civil litigants. *Degen v. United States*, 517 U.S. 820, 825 (1996). The main rule governing criminal discovery is Rule 16, not Rule 17. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (contrasting Rule 16 and Rule 17). Although Rule 17(c) provides that a criminal defendant may obtain an order directing a third party to produce documents, Rule 17(c) is "not intended to provide a means of discovery for criminal cases." *United State v. Nixon*, 418 U.S. 683, 698 (1974); *see also Bowman Dairy*, 341 U.S. at 220; *United States*

*v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) ("Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge.").

Rather, Rule 17(c) "allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial." *Tokash*, 282 F.3d at 971; *see Nixon*, 418 U.S. at 699-700 (evaluating whether subpoenaed materials would be admissible at trial). The Supreme Court has contrasted Rule 17(c) trial subpoenas with grand jury subpoenas, which can seek a broader variety of materials because one "simply cannot know in advance whether information sought during the investigation will be relevant and admissible." *United States v. R. Enterprises*, 498 U.S. 292, 300 (1991). When, as here, an indictment is pending, a Rule 17(c) trial subpoena can only be used to "make a reasonably specific request for information that would be both relevant and admissible at trial." *Id.*; *see also Tokash*, 282 F.3d at 971.

Courts have, in certain contexts, authorized Rule 17(c) subpoenas to be issued for proceedings before and after trials. *See, e.g.*, *United States v. Winner*, 641 F.3d 825 (10th Cir. 1981) (approving Rule 17(c) subpoenas for post-trial motions and sentencing). But, in all contexts, "courts have made clear that Rule 17 is not 'a general discovery device.'" *United States v. Boender*, 2010 WL 1912425 (May 12, 2010 N.D. Ill.) (quoting *United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007)). Courts are careful to apply *Nixon*'s requirements that the subpoena seek information that is (1) "evidentiary and relevant," and (2) "not otherwise procurable reasonably in advance by exercise of diligence"; that (3) the party cannot properly prepare without advance inspection of the materials; and that (4) the application is made in good faith and not as a "fishing expedition." *See, e.g.*, *Boender*, 2010 WL 1912425, at *1 (applying *Nixon*'s test to post-trial motion).

The Magistrate Judge erred in finding that the subpoenas satisfy Rule 17(c)'s requirements. First, the Magistrate Judge should have quashed the subpoenas because they are being used as a discovery device. The defense does not know what the State's data may show. With admirable candor, defense counsel has acknowledged in status conferences that the data may well not support a challenge to the jury selection process. Importantly, the Magistrate Judge did not state that the requested would be relevant, but instead stated that the defendant established "potential relevance here" and that the subpoenas were seeking "relevant or potentially relevant information here, depending on how it all plays out." *See* Doc. 68 and Audio Recording. Thus, the defense cannot show that the data it seeks will be "evidentiary and relevant," as opposed to an exercise in discovery.

Second, the Magistrate Judge did not explain why the defense is unable properly to prepare its fair cross-section challenge to the jury plan without this information. In order to successfully make a *prima facie* case in a fair cross section challenge, a defendant must show "'(1) that the group alleged to be excluded [from the jury] is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.'" *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (quoting *Duren v. Missoui*, 439 U.S. 357, 364 (1979)).

The defense has already obtained JS-12 Reports that show the percentages of racial and ethnic minorities included in the Milwaukee Division's Qualified Wheel. *See* Doc. 32, at 4. The defense can compare—and has already compared—that information to publicly available demographic information about the Milwaukee Division's residents. *See id.* at 5-6. Indeed, requesting this type of information for a fair cross-section challenge appears to be extremely

7

unusual and has not been present even in successful fair cross section challenges. *See Duren*, 439 U.S. at 364-65. Sonag has never articulated, and the Magistrate Judge did not explain, what marginal benefit that the demographic data from the State would provide. Instead, the Magistrate Judge appeared simply to credit Sonag's bald assertion that it needed the data.

Finally, the Magistrate Judge should have quashed the subpoenas because "compliance would be unreasonable or oppressive." *See* Fed. R. Crim. P. 12(c). Although the defense has worked with the State to narrow the information to be disclosed, even the proposed modification to the subpoenas would require the State to disclose confidential information for thousands of individuals across twelve counties, in contravention of State law. In addition, the proposal would require the State to expend "a great deal of time and expense to obtain this information." Doc. 52, at 1. That expenditure of resources, combined with the public interest in maintaining the privacy of thousands of individuals, renders the subpoenas unreasonable, especially when the defense has not articulated any particularized need for the information.

## II. The Law Does Not Otherwise Provide for Disclosure to a Criminal Defendant

Although the Magistrate Judge based his order on Rule 17, it bears noting that no other legal authority empowers the Court to compel the State to disclose the requested records to a criminal defendant. The most pertinent statute is the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.* In this Act, Congress created a scheme to balance the interest of defendants in having a fairly chosen jury pool and the public interest in potential jurors' privacy. Section 1861 of Title 28 sets forth the policy that all litigants in Federal courts shall have the right to a jury "selected at random from a fair cross section of the community" wherein the Court convenes. Section 1863 then provides detailed, comprehensive requirements for district courts to establish a juror selection plan that achieves that objective. *See id.* § 1863(a). Critically, Section 1863(d)

directs that State officials must provide "voter registration lists, lists of actual voters, and other appropriate records" to the "the jury commission or clerks" for purposes of creating and administering the jury plan. *See* 28 U.S.C. § 1863(d). Section 1863(d) also provides that the United States Attorney General may petition the court for an order compelling State officials to provide such records, but the Act does *not* authorize criminal defendants to petition for such an order. *See id.*

Rather, the Act provides litigants with much narrower rights to access records. Specifically, the Act provides that a litigant has rights to inspect records maintained by the district regarding the jury pool in his or her own case, but the Act does not give litigants rights to obtain information from the States. *See* 28 U.S.C. § 1867(f). In a related context, the Seventh Circuit has rejected a defendant's attempt to obtain additional information beyond what the Act permits. *See United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987) (rejecting defendant's request to inspect juror questionnaires to support claim that "the jury selection plan had the effect of systematically excluding from the master lists disproportionate numbers of students, blacks, people with Latin surnames, and citizens who are not registered to vote"). Thus, by expressly providing one mechanism to obtain records from the State and then providing different rights for a criminal defendant's access to records, the Act forecloses a criminal defendant from obtaining records from a State directly.

In its initial Motion for Preliminary Order Approving and Enforcing Subpoenas *Duces Tecum*, Sonag cited the Help America Vote Act ("HAVA") in claiming that the Court has authority to order the State to provide these records. *See* Doc. 32. But HAVA has no bearing on this criminal prosecution. HAVA requires states to retain records relating to voting and does not apply to all records held by the Wisconsin DOT. *See* 52 U.S.C. § 20701. Moreover, HAVA provides only

that such voting records must be provided to the United States Attorney General upon his written request. *Id.* § 20703. Nothing in HAVA contemplates that a State must provide such voting records to criminal defendants. Sonag invoked due process generally, *see* Doc. 32, at 7, but Sonag cited no authority that construes the Constitution's due process guarantee as giving criminal defendants a right to obtain State's voting records, let alone records that show confidential information for thousands of private individuals.

To be clear, the United States is committed to protecting the right of every criminal defendant to a trial before a jury selected at random from a fair cross section of the community. This district's Jury Plan seeks to do just that. To the extent that the Jury Plan should be improved, the United States stands ready to work with the Court when it revisits the district's Jury Plan. But this single criminal case is not the proper venue for revising the Jury Plan for the entire district.

### III. The United States Has Standing To Move To Quash the Subpoenas

In his oral ruling, the Magistrate Judge denied the United States' Motion to Quash on the merits, which implies that he held that the United States had standing to move to quash the subpoenas. *See* Doc. 68 and Audio Recording. The United States does not object to this part of the Magistrate Judge's ruling, but reiterates its standing arguments from its Motion to Quash.

"A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interest." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3rd Cir. 1980)). Courts have contemplated that a party has a legitimate interest in the efficient resolution of cases. *See, e.g.*, *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306-07 (S.D. Ind. 2016) ("a party's objection that the time required of the non-party to comply with the subpoena would extend the period of production of documents or the completion of depositions beyond the court's

discovery deadline might be accorded substantial weight in a particular case"). Here, the United States has a legitimate interest in this prosecution proceeding, which requires pretrial motions to be filed as soon as possible. All other pretrial motions have been filed, and trial is scheduled for February 2019. But Sonag's potential challenge to the Jury Plan has been placed on a different, slower track. Although the State has represented that it may be able to provide requested information by early October, Sonag has indicated that it plans to use the data to pursue a complicated analysis, involving experts and "Geo-coding," which will take several months to complete. If the defense files a motion based upon its analysis, the United States may need to engage its own expert and potentially conduct his or her own analysis. Evidentiary hearings and briefing may be necessary, and those steps may not occur until late this year, at the earliest. Permitting Sonag to premise its Jury Plan challenge on the requested data from the State thus presents a serious threat to the United States' interest—and the public interest—in speedy resolution of this case.

In addition, the United States has a legitimate interest in the orderly establishment of the district's Jury Plan in accordance with the Jury Selection and Service Act. The United States brings criminal prosecutions in hundreds of cases in this district each year. Those prosecutions depend upon jurors serving on both grand juries and petit juries. Consequently, those prosecutions require that the district's Jury Plan be developed in an orderly fashion that ensures jurors are available throughout the year. That is precisely what the Act contemplates in requiring a State to provide records to the Court to establish its plan. *See* 28 U.S.C. § 1863(d). Enforcing these subpoenas in this single criminal case, out of the normal course of developing the district's Jury Plan process, creates a risk of the Jury Plan being upended and the United States' criminal

prosecutions being hampered. This is a weighty, legitimate interest that gives the United States standing to ask the Court to quash these subpoenas.

## CONCLUSION

For the reasons stated above, the Court should overrule the United States Magistrate Judge's oral ruling denying the United States' Motion to Quash and quash the two subpoenas that Sonag served on the Wisconsin Department of Transportation and the Wisconsin Elections Commission.

Respectfully submitted this 1st day of October, 2018.

*s/ Zachary J. Corey*
MATTHEW D. KRUEGER
United States Attorney
ZACHARY COREY
Assistant United States Attorney
Attorneys for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Fax: (414) 297-1738
Email: matthew.krueger@usdoj.gov